**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

CURTIS ANDERSON and
GLORIA ANDERSON,                                              PLAINTIFFS,

VS.                                              CIVIL ACTION NO. 4:06CV61-P-B

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,                                            DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon Plaintiffs' Motion for Summary Judgment [13-1] and Defendant's Motion for Summary Judgment [17-1]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Curtis and Gloria Anderson own a home in Ruleville, Mississippi. The subject homeowners insurance policy was effective from January 16, 2004 to January 16, 2005, policy number 63 23 HO 157922 issued by Nationwide Mutual Fire Insurance Company. The policy was renewed on December 15, 2004 for the period of January 16, 2005 to January 16, 2006.

On or about February 1, 2005 the plaintiffs filed a claim with Nationwide for mold damage. On February 7, 2005 Nationwide sent an adjuster, Joy Hughes, to the Andersons' home. There Hughes found mold on the walls, baseboards, flooring, and ceiling of several rooms. The Andersons told Hughes that mold had appeared for the past few winters and that prior to this event, they had cleaned off the mold with a mixture of bleach and water.

On March 15, 2005 Nationwide sent a civil engineer, Richard Steed, to inspect the home. Once again the Andersons advised that they had experienced mold in past winters but had cleaned

1

it off with bleach and water. In his resulting report, Steed opined that the mold was caused by excessive condensation, which in turn was caused by: (1) lack of ventilation in certain areas; (2) poor construction and lack of maintenance and lack of maintenance; (3) lack of insulation in the walls of the home; and/or (4) the heating/cooling system in the house – *i.e.*, lack of central air and use of area or window units.

More specifically, Steed concluded *inter alia* that:

[T]he mold growth on the walls and on the clothing items in the closets ... was caused from excess condensation inside the house. We did not find any indication of plumbing leaks, roof leaks, or water intrusion from the exterior. The original home was constructed with no insulation in the exterior walls. The house is heated and cooled with area wall heaters and window a/c units. These types of systems do not allow for conditioning of the air in the house which can lead to moisture buildup in the air.
The walls with no insulation allow cooler air in the lower portions of the walls [where most of the mold was located] which condensates during the winter months when the rooms are heated.
\*\*\*
We believe that additional ventilation should be provided in the crawlspace. Moisture buildup in this area can lead to mold growth as observed around the exterior walls. Additional ventilation holes and a crawlspace fan will be required to achieve this.

On April 11, 2005 Nationwide sent the Andersons a letter denying coverage. The letter stated: "After carefully considering the evidence, we have determined that the claim in question is not a covered loss. For this reason, payment cannot be made. I have enclosed a copy of the section(s) of your policy that do not include, or that specifically excludes your type of loss." The letter went on to cite the relevant sections of the policy. First, the letter cited the Covered Causes of Loss section stating that "We cover accidental physical loss to property described in Coverages A and B except for losses excluded under Section I – Property Exclusions." Under Section I – Property Exclusions, the letter cited paragraph 1 which states: "We do not cover loss to any property resulting directly or

2

indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss. ... (m) Biological deterioration or damage, except as provided by Section I - Additional Property Coverages – Biological Deterioration or Damage Clean Up and Removal." The letter then cited the aforementioned Additional Property Coverage:

> 14. **Biological Deterioration or Damage Clean Up and Removal**. In the event that a covered cause of loss results in biological deterioration or damage to property covered under Coverages A, B, and C, we will pay, up to the amount shown on the Declarations, for:
>
> a) the cost to clean up, remove and dispose of the biological deterioration or damage to covered property;
>
> b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the biological deterioration or damage;
>
> c) the cost of testing which is performed in the course of clean up and removal of the biological deterioration or damage from the residence premises; and
>
> d) additional living expenses you may incur, as outlined under Coverage D, that results from items a), b), or c) above.
>
> The coverage amount shown on the Declarations for this Additional Property Coverage is the most we will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if you report the biological deterioration or damage to us within 180 days of having first discovered the biological deterioration or damage.
>
> The covered cause of loss that causes or results in biological deterioration or damage to covered property must have occurred during the policy period.
>
> This is an additional amount of coverage.

On May 3, 2005 the Andersons sent a letter to the Mississippi Department of Insurance asking for a review of Nationwide's denial of their claim. On May 9, 2005 the Department of

Insurance sent a letter concluding: "My review of this matter revealed that the claim in question is not a covered loss under the Anderson's policy and therefore the claim was correctly denied."

On February 7, 2006 the Andersons filed a Complaint against Nationwide in the Circuit Court of Sunflower County, Mississippi alleging "bad faith breach of contract in denying this claim and in attempting to avoid providing the basis therefore, [sic] Plaintiffs are entitled to damages in an amount sufficient to restore their property to an undamaged state and punitive damages in an amount exceeding $100,000.00 and attorneys' fees, costs and all other damages awardable at law."

On April 14, 2006 Nationwide removed the action to federal court alleging complete diversity and an amount in controversy over $75,000. The plaintiffs filed no motion to remand. In their Answer, Nationwide asserted a counterclaim for declaratory judgment seeking a judgment *inter alia* that there is no coverage, that Nationwide fulfilled its obligations, and they are not liable for bad faith.

The plaintiffs filed their motion for summary judgment on August 29, 2006. Nationwide filed its motion for summary judgment on the next day. Although the plaintiffs' motion was fully briefed, they did not file a direct response to Nationwide's motion for summary judgment. The court presumes that their own motion for summary judgment serves as the response to the defendants' motion.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary

4

materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a

motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. 180-Day Requirement**

Other than the policy language quoted above, another important provision is the definition of "biological deterioration or damage" which is defined to mean "damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of ... mold ... and any by-products of these organisms, however produced." Policy at A2; ¶ 11.

Having considered all of the parties' arguments, the court concludes that the dispositive issue in this particular case is when the plaintiffs were required to report the presence of mold damage. As stated above, paragraph 14 of the Additional Coverages section requires the insured to "report the biological deterioration or damage to us within 180 days of having first discovered the biological deterioration or damage."

Nationwide argues that it is undisputed that the plaintiffs advised Nationwide that they had experienced mold in their home during the last several winters and that they cleaned it off with a mixture of bleach and water. Therefore, Nationwide argues, the plaintiffs were aware of the mold damage well before the 180-day deadline to report it and consequently the Additional Coverage for "Biological Deterioration or Damage Clean Up and Removal" for up to $10,000 does not apply.

The plaintiffs counter that "biological deterioration or damage" is not the mold itself but the damage to natural or manmade materials that result from the presence of the mold. They argue further that there is no requirement that the insured report anything other than damage to materials as a result of mold. Furthermore, the plaintiffs contend there is no proof that any such damage was known to the insureds more than 180 days prior to the report they made of the damages.

There are at least three problems with the plaintiffs' argument that, when combined, are insurmountable.

First, the definition of "biological deterioration or damage" – *i.e.* "damage or decomposition, breakdown, and/or decay of manmade or natural material *due to* the presence of ... mold ... and any by-products of these organisms, however produced" (emphasis added) – lends itself to the conclusion that the mere presence of mold itself can *cause* or be *symptomatic of* damage, decomposition, breakdown, or decay of manmade or natural material. This interpretation depends on the placement of the term "due to" in the definition, which can be further illustrated if one substitutes the synonymous term "caused by" in place of "due to." When truncating the definition, the proposition is clearer: "damage ... of manmade or natural material due to [or caused by] the *presence* of mold." (emphasis added).

The second problem with the plaintiffs' argument is that there is no Fed. R. Evid. 702

evidence offered by either side regarding the nature of mold.[1] The nature of mold is an improper subject for non-expert speculation during trial since such speculation would result in non-experts submitting scientific opinions to the jury of whether the presence of mold in a structure is damage in and of itself and/or symptomatic of other damage to the structure, *i.e.*, condensation which is a form of water. This case is currently at the summary judgment stage and it is during this stage that the parties are supposed to have all of their evidence to support their respective positions. Since there is no Rule 702 testimony regarding the nature of mold, the court concludes that the plaintiff cannot create a genuine issue of material fact necessitating a trial as to whether or not the presence of mold is damage in and of itself and/or symptomatic of other damage to the structure. This finding of fact is a necessary prerequisite in determine whether the plaintiffs had knowledge of "biological deterioration or damage" before the 180-day reporting requirement.

The third problem with the plaintiffs' argument is that they have not alleged via affidavit or any other summary judgment evidence, other than a conclusory allegation in the plaintiffs' reply brief, that they had no knowledge of any damage caused by the prior mold infestations. With regard to this, the reply brief states:

> While it may be accurate to state that the Plaintiffs had observed mold in their home, at least in some spots, on earlier occasions, there is no proof whatsoever that they ever observed any 'damage to natural or manmade materials' as a result thereof. Indeed, the insured statements relied on by the insurer indicate that the presence of mold was all that was observed by the insured and that they were able to remove it on the prior occasions. There is no requirement that the insured report anything other than damage to materials as a result of mold and there is no proof that any such damage was known to the insureds more than 180 days prior to the report they made of that damage. they have submitted no proof that the prior mold infestations did *not*

---

[1] *See* FED. R. EVID. 701(C) ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are ... not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

8

cause any damage to the insured property.

The plaintiffs do not dispute that they experienced mold infestations for several winters before making their claim in February 2005 and that in the past they have cleaned off the mold with a mixture of bleach and water. It is substantially significant that they considered the mold infestations problematic enough to clean off the mold on several prior occasions over a period of years. Moreover, the very title of the subject coverage is "Biological Deterioration or Damage Clean Up and Removal.

As set out above in the standards for summary judgment, the evidence relied on to create a genuine issue of material fact must be substantial, *Southern Distributing Co.*, 574 F.2d at 826, and cannot consist of mere conclusory allegations. *Celotex*, 477 U.S. at 324.

Since the plaintiffs have submitted no evidence that the prior mold infestations did not cause physical damage on the property prior to their February 2005 claim, they cannot be said to have created a genuine issue of material fact requiring a jury to decide whether they reported the mold damage in a timely manner. Consequently, summary judgment should be granted in favor of Nationwide with regard to the plaintiffs' claim that they were wrongfully denied coverage for their mold damage since the plaintiffs have no evidence creating a genuine issue of material fact that they reported the mold damage within 180 days of first learning of it as required by the policy.

Because the plaintiffs cannot meet their burden in creating a genuine issue of material fact on the question of timeliness, it is unnecessary for the court to delve into the issue of whether the mold damage was caused by a covered event, another requirement listed in paragraph 14 of the Additional Coverage section.

## C. Punitive and Extra-Contractual Damages

"The law is well settled that the insured has the burden of establishing a claim for bad faith denial of an insurance claim." *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992). "The insured must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Id*. "The insurer need only show that it had reasonable justifications, either in fact or in law, to deny payment." *Id*. "Moreover, whether an insurer had an arguable reason to deny an insured's claim is an issue of law for the court." *Id*.

Considering the analysis above, in addition to Nationwide's argument that the mold damage must have been caused by a "covered cause of loss" and all of the plaintiffs' arguments to the contrary, the court concludes as a matter of law that Nationwide denied the claim on a reasonable basis and that the plaintiffs have not met their burden in demonstrating malice, gross negligence, or a reckless disregard of their rights. Therefore, summary judgment should be granted to Nationwide regarding the plaintiffs' claims for punitive and/or extra-contractual damages.

## D. Specificity of the Claim Denial Letter

The plaintiffs argue that since Nationwide's April 11, 2005 denial letter did not specify the basis for the denial of the claim, other than setting out the policy language it decided applies to prevent coverage, Nationwide may therefore not lawfully deny the claim. The plaintiffs cite *Crenshaw*, 483 So.2d at 278 for the proposition that an insurer has an obligation to advise the insured of the reason for denial of the claim and its failure to do so triggers coverage.

The defendant counters that the April 11, 2005 letter sufficiently informed the plaintiffs of the basis for the denial of their claim. The defendant also argues that the Mississippi Supreme Court

in *Crenshaw* made no such ruling on page 278 or anywhere else in the opnion and that the Court instead wrote that "if the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it." *Id*. at 276.

After considering the matter, this court concludes that the plaintiffs have not pointed to clear Mississippi precedent holding that if a claim denial letter does not meet a standard of specificity higher than that provided in this case, the claim must automatically be covered. Though the subject letter could have stated its reasons more thoroughly, the letter did contain the operative policy provisions that was the basis for the denial of the claim. The court has already concluded that denial based on the cited provisions in the letter were valid reasons. Therefore, summary judgment should be granted in Nationwide's favor on this issue.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Plaintiffs' Motion for Summary Judgment [13-1] should be denied and that Defendant's Motion for Summary Judgment [17-1] should be granted. Therefore, the court will issue a Final Judgment declaring that: (a) Nationwide fulfilled its obligations to the Andersons under the subject policy; (b) the subject policy provides no coverage or benefits for the Andersons' claimed loss; (c) Nationwide had a legitimate or arguable reason to deny coverage and did not wrongfully deny coverage to the Andersons in this matter; and (d) Nationwide did not act tortiously or maliciously toward the Andersons at any time relevant to this matter. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of March 6, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE